ORIGINAL

FILED

IN THE UNITED STATES COURT OF FEDERAL CLAIMS  FEB 2 6 2016

U.S. COURT OF
FEDERAL CLAIMS

CANPRO INVESTMENTS LTD.,

      Plaintiff,

vs.

THE UNITED STATES,

      Defendant

No.:

# 16-268 C

/

## COMPLAINT

    Plaintiff, CanPro Investments Ltd., sues Defendant, The United States, acting through and on behalf of the General Services Administration and the Social Security Administration, and alleges as follows:

### JURISDICTION, VENUE AND PARTIES

    1.    Jurisdiction and venue are proper in this Court under 28 U.S.C. § 1491(a)(1), 28 U.S.C. § 1491(a)(2), 41 U.S.C. § 7104(b)(1), and 41 U.S.C. § 7103(g), and it arises from the Court's jurisdiction under the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.*

    2.    Plaintiff CanPro Investments Ltd. ("CanPro" or "Plaintiff") is a foreign corporation with its principal place of business in Montreal, Québec, Canada. CanPro owns, operates, and manages a commercial office building, known as One Park Place, located at 621 NW 53rd Street, Boca Raton, Florida 33487 ("One Park Place").

    3.    Defendant is the United States of America ("Defendant," "U.S." or "Government"), acting by and through the General Services Administration ("GSA"), which is an independent agency of the United States government created to provide management and support to federal agencies. GSA controls approximately 11,495 square feet of leased space on the fourth floor at One Park Place ("Leased Premises").

15183748v1 0964084

No.:

4.    Defendant is also acting by and through the Social Security Administration ("SSA"), which is an independent agency of the United States government that administers Social Security. SSA occupies and otherwise shares control of the Leased Premises.

5.    On or about November 12, 2014, CanPro submitted to the contracting officer its certified claim in the amount of $250,000.00 and for termination of Lease No. GS-04B-62453 (the "Lease") entered into between Plaintiff and the GSA and SSA for the Leased Premises. A copy of the Lease (including amendments) is attached hereto as Exhibit "A."

6.    The contracting officer denied the claim and the Plaintiff's request for mediation and entered a final decision on March 6, 2015. A copy of the final decision is attached as Exhibit "B."

## FACTUAL ALLEGATIONS

7.    CanPro is the owner and operator of One Park Place. One Park Place is a multi-story commercial office building containing over 237,000 square feet of Class A office space. One Park Place consists of a main office building, lobby, courtyard, and adjacent five-story parking garage. One Park Place is an attractive, modern, glass-covered building located on a landscaped campus.

8.    CanPro leases space in the building to various corporate and organizational tenants. CanPro also maintains its own operational offices in the building. CanPro strives to maintain and uphold a clean, orderly, and corporate environment throughout One Park Place and its environs. A copy of the Rules and Regulations for One Park Place and its tenants is attached hereto as Exhibit "C."

### *GSA NEGOTIATIONS TO LEASE SPACE FOR SSA*

9.    On or about August 22, 2011, the GSA made a solicitation for offers to lease a space of approximately 13,220 rentable square feet of space (with 11,495 square feet of usable

2

No.:

space) for the SSA offices in the area of Delray Beach, Florida.  A copy of the Solicitation for Offers ("SFO") No. 7FL2342 is attached hereto as part of the Lease as Exhibit "A."

10.    On or about September 16, 2011, the SFO No. 7FL2342 was amended to change the number from 7FL2342 to 1FL2274.  *See* Amendment No. 1 to Lease attached hereto as Exhibit "A."

11.    On or about September 21, 2011, CanPro made a proposal to lease space to the GSA in response to SFO 1FL2274 to have the SSA as a tenant at the Leased Premises.

12.    On or about March 19, 2012, the GSA amended the SFO to decrease the amount of space required from 13,220 rentable square feet of space (with 11,495 square feet of usable space) to 11,475 rentable square feet of space (with 9,978 usable space).  *See* Amendment No. 2 to Lease attached hereto as Exhibit "A."

13.    Upon information and belief, GSA modified the SFO for a smaller lease space in order to avoid the appearance of entering into excessive lease space that is "above market" costs when it knew or should have known that the SSA would require a larger space to meet the volume of SSA visitors.

14.    Upon information and belief, the GSA modified the solicitation due to concerns regarding an inspector general report and agency scrutiny on excessive spending by the GSA.

15.    During the negotiations between CanPro and the GSA relating to the Leased Premises and prior to entering into the Lease, CanPro inquired regarding the expected volume of visitors to the SSA at the Leased Premises.

16.    Prior to the parties entering into the Lease and during negotiations surrounding the Lease, the GSA and/or SSA assured CanPro that the expected volume of SSA visitors during peak times would be no greater than 250 visitors throughout the day.

15183748v1 0964084

No.:

17.    During the negotiations between CanPro and the GSA relating to the Leased Premises and prior to entering into the Lease, the GSA knew or should have known that the SSA had expected temporary and/or permanent office closings in the area surrounding the Leased Premises, which would have resulted in a higher volume of SSA visitors to the Leased Premises.

18.    During the negotiations between CanPro and the GSA relating to the Leased Premises and prior to entering into the Lease, the GSA knew or should have known that the expected volume of visitors to the SSA would exceed 250 visitors throughout a day of SSA operations.

19.    The GSA failed to disclose and/or misrepresented the expected volume of SSA visitors to the Leased Premises during the negotiations between CanPro and the GSA relating to the Leased Premises and prior to entering into the Lease.

20.    Prior to the parties entering into the Lease and during negotiations surrounding the Lease, the GSA failed to disclose and/or misrepresented that the SSA expected to have temporary and/or permanent office closings in the area surrounding the Leased Premises.

### *The Lease and Excessive SSA Visitors to the Leased Premises*

21.    On or about September 13, 2012, the GSA awarded the SFO 1FL2274 for SSA office in Delray Beach, Florida, to CanPro.

22.    On or about October 22, 2012, Plaintiff entered into the Lease and leased the 11,475 rentable square feet of office space (with 9,978 square feet of usable space), along with fifty-eight parking spaces, to GSA.

23.    The parties signed the Lease with the specific purpose of utilizing the Leased Premises for the business operations of SSA consistent with the understanding of the parties regarding expected SSA visitors.

15183748v1 0964084

No.:

24.    Shortly after entering into the Lease and SSA occupying the Leased Premises, visitors to SSA's offices regularly exceeded 350 to 700 persons daily. As a result, SSA's offices were (and continue to be) consistently overcrowded and the abundance of visitors is disruptive to the entire building with insufficient space to accommodate the excess visitors.

25.    The Government's failure to control the number of visitors to the Leased Premises resulted in overcrowding of the elevators, restrooms and other public areas at One Park Place and disruption to One Park Place's other tenants. At times, there was mayhem in the parking areas, with the vehicles of SSA's invitees blocking other tenants' access to their parking spaces.

26.    Visitors to the Leased Premises were found wandering the halls of other floors of the building, entering other offices and private restrooms, disrupting other tenants and thus causing harm to Plaintiff's business relationship to said tenants. During times of excessive overcrowding, Plaintiff has been repeatedly required to respond to complaints from tenants that their offices are being interrupted by SSA's invitees.

27.    The unreasonably excessive number of visitors also resulted in crowds of SSA's guests creating de facto "smoking areas" in various areas of the premises, which is a non-smoking facility. In addition, the crowds were disorderly and an impediment to the corporate and business-like environment of One Park Place.

28.    Plaintiff has been required to hire additional security, including full time guards, to control the incessant crowds at additional costs to Plaintiff. Plaintiff has likewise incurred additional maintenance costs to the grounds and infrastructure of the building resulting from the excess volume of visitors.

29.    Examples of the activities and offenses engaged in by SSA's invitees have included, but are not limited to, the following:

15183748v1 0964084

No.:

      a.     Numerous arrests and/or altercations at One Park Place due to drugs, weapons or other improper conduct by the SSA invitees;

      b.     Tenants in fear for their safety in the parking garage and throughout One Park Place;

      c.     Refuse and trash littered on the common areas;

      d.     Yelling profanity and otherwise harassing building tenants and their employees;

      e.     Soliciting money or dates from other persons onsite;

      f.     Sleeping, urinating or loitering, including in the halls and courtyard, of One Park Place; and

      g.     Leaving personal items in offices other than SSA, including weapons and other dangerous and/or harmful materials.

30.     There were times the situation was so bad that many tenants in the building and many of Plaintiff's own employees refused and/or were afraid to use the common area courtyard for lunch or to use the restrooms for safety and/or hygiene reasons.

31.     Furthermore, potential tenants have broken off negotiations, filed lawsuits against CanPro, or have refused to consider leasing at One Park Place because of the crowds, noise, and interference caused by the SSA's control over the Leased Premises and/or the excessive volume of its visitors.

32.     For almost a year and at great expense, CanPro had to defend litigation from a tenant that was a direct result of the SSA's failure to control the volume of visitors to One Park Place and the incidents resulting from the overcrowding by SSA visitors.

15183748v1 0964084

No.:

33.    Although the volume of visitors has fluctuated during certain periods in conjunction with the opening and/or closing of SSA offices in the area, the problem continues and the volume of SSA visitors exceeds what was reasonably expected by CanPro based on communications with the GSA and /or SSA prior to entering into the Lease.

34.    Defendant has direct control over the public effects of the chaos caused by the hundreds of daily visitors to SSA.

35.    Defendant's conduct and manner of behavior is injurious to Plaintiff, which Defendant has failed to adequately address and/or resolve despite repeated requests by Plaintiff and multiple options provided by CanPro to resolve the matter.

36.    At all times, the Government through the GSA and/or SSA was in a position of superiority, both as to power and knowledge regarding material information as it relates to SSA's intended use of the Leased Premises that is the subject of the Lease, including, but not limited to, the expected amount of daily visitors to the SSA at the Leased Premises, and knew that the GSA's and/or SSA's statements to, actions and/or omissions from Plaintiff since 2011 to present regarding the SSA's expected daily visitors to the SSA at the Leased Premises, office closings in the surrounding area, and other related information pertaining to the terms of the Lease, would be justifiably relied upon by Plaintiff as accurate and truthful.

37.    Plaintiff signed the Lease without knowledge of the misrepresentations and/or material omissions of the GSA and/or SSA, and because the GSA presented the Lease and any documents relating to the Lease to the Plaintiff in a manner that left Plaintiff with no bargaining power, again, with the GSA being in a superior position of power and knowledge.

38.    Plaintiff reasonably relied on the GSA and/or SSA, as a government entity, to provide all material information relating to the Lease in a truthful and accurate manner.  Plaintiff

15183748v1 0964084

No.:

was entitled to rely on the GSA's and/or SSA's representations and actions both legally and factually from 2011 to present, did rely on same, and suffered damages and loss as a result.

39.     Plaintiff entered into the Lease based upon its reliance that the GSA and/or SSA was acting honestly and fairly.  The GSA and/or SSA did not act honestly or fairly, evidently since the commencement of the bidding process relating to the Lease and throughout the parties' contractual relationship, a fact which Plaintiff has discovered only recently.

40.     Plaintiff has complied with all conditions precedent to the institution of this action, or such actions have been waived, excused or prevented.

41.     Plaintiff has retained undersigned counsel and the law firm of Hinshaw & Culbertson LLP to represent it in this cause, and as such, is obligated to pay reasonable attorneys' fees.

## COUNT I – BREACH OF CONTRACT (SUPERIOR KNOWLEDGE)

42.     Plaintiff hereby re-alleges and reaffirms paragraphs 1-41 of the Complaint above, as if fully set forth herein.

43.     This is an action for damages against the Defendant for the SSA's and/or GSA's breach of the Lease resulting from SSA's customers at the Leased Premises in excess of the reasonable number of daily visitors and Defendant's superior knowledge of vital information regarding the expected volume of SSA visitors.

44.     Defendant's use and control of the Leased Premises is unreasonable and beyond the intended use provided for under the Lease.

45.     Plaintiff undertook to perform under the Lease without vital knowledge of the Defendant's expected volume of SSA visitors at the Leased Premises.

No.:

46.    This vital knowledge includes, but is not limited to, Defendant's closing of SSA offices in the vicinity of the Leased Premises and the expected high volume of SSA visitors to the Leased Premises.

47.    Defendant was aware that Plaintiff did not have access to vital information, including, but not limited to, Defendant's closing of SSA offices in the vicinity of the Leased Premises and the expected high volume of SSA visitors to the Leased Premises, and failed to provide, concealed and/or misrepresented this vital information to Plaintiff.

48.    The information supplied by the Defendant and/or Defendant's failure to disclose information prior to the execution of the Lease misled Plaintiff as to the expected volume of SSA customers to the Leased Premises.

49.    Plaintiff's inquiries for information as to the expected volume of SSA visitors to the Leased Premises was never sufficiently answered and the Defendant never provided the vital information necessary for Plaintiff to adequately determine the expected volume of SSA visitors and therefore accurately project the viability of SSA occupancy at the Leased Premises.

50.    Defendant did, in fact, possess information that would have allowed Plaintiff to determine the expected volume of SSA visitors at the Leased Premises, including, but not limited to, Defendant's knowledge of SSA office closings in the area and Defendant's tracking of SSA visitors at the office(s) that were closed, whether temporarily and/or permanently.

51.    Defendant's misstatements and/or omissions of fact were material in nature.

52.    Plaintiff asserts that these misstatements and/or omissions of fact were intentional.

15183748v1 0964084

No.:

53.    Plaintiff reasonably relied on Defendant's representations and that Defendant was acting in good faith, dealing fairly and making truthful statements to Plaintiff without concealing material information.

54.    In reliance on the Defendant's representations and that the Defendant was acting honestly and in good faith, Plaintiff entered into the Lease with an understanding that, *inter alia,* the volume of SSA visitors to the Leased Premises would not exceed 250 at peak times throughout an entire day of SSA operations.

55.    The actual volume of SSA visitors to the Leased Premises has continually exceeded this amount since the SSA occupied the Leased Premises.

56.    Had Plaintiff known of the vital information that Defendant failed to disclose and/or misrepresented regarding the expected volume of SSA visitors, Plaintiff would never have entered into the Lease.

57.    Based on the foregoing, Defendant materially breached the Lease.

58.    As a direct and proximate result of Defendant's failure to disclose and control the excessive number of visitors to the Leased Premises, Plaintiff has suffered substantial damages.

59.    By reason of Defendant's actions and/or inactions, Plaintiff has suffered and will continue to suffer extreme hardship and actual and future irreparable injury, loss, and damages.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment for damages in the amount of $250,000.00 in its favor and against the Defendant The United States, and more particularly, the General Services Administration and the Social Security Administration, rescind and/or terminate the Lease, statutory interest under the Contract Disputes Act, and such further relief the Court deems just and proper.

15183748v1 0964084

No.:

## <u>COUNT II – BREACH OF CONTRACT (MUTUAL MISTAKE)</u>

60.     Plaintiff hereby re-alleges and reaffirms paragraphs 1-41 of the Complaint above, as if fully set forth herein.

61.     Plaintiff pleads this count in the alternative.

62.     Defendant and Plaintiff entered into the Lease under the belief that, *inter alia,* the volume of SSA visitors to the Leased Premises would not exceed 250 at peak times throughout an entire day of operation.

63.     The estimate later proved grossly erroneous.

64.     Both Defendant and Plaintiff were mistaken in their belief regarding the expected volume of SSA visitors to the Leased Premises.

65.     The mistaken belief regarding the expected volume of SSA visitors to the Leased Premises constitutes a basic assumption underlying the Lease.

66.     The mistaken belief had a material effect on the Lease.

67.     In meeting its contractual obligations under the Lease, Plaintiff incurred operating and other expenses as a direct result of the excessive volume of SSA visitors greater than Lease payments collected from Defendant or any provisions contemplated under the Lease.

68.     Plaintiff is not responsible for the gross inaccuracy provided by Defendant regarding the expected volume of SSA visitors to the Leased Premises and contemplated under the Lease.

69.     The parties' mutual mistake in their belief regarding the expected volume of SSA visitors to the Leased Premises had (and continues to have) a material effect on Plaintiff's contractual performance.

70.     Due to the parties' mutual mistake, reformation and/or termination of the Lease is proper.

15183748v1 0964084

No.:

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment for damages in the amount of $250,000.00 in its favor and against the Defendant The United States, and more particularly, the General Services Administration and the Social Security Administration, rescind and/or terminate the Lease, and such further relief the Court deems just and proper.

## COUNT III – BREACH OF CONTRACT (MISREPRESENTATION/CONCEALMENT)

71.     Plaintiff hereby re-alleges and reaffirms paragraphs 1-41 of the Complaint above, as if fully set forth herein.

72.     Plaintiff pleads this count in the alternative.

73.     This is an action for damages against the Defendant resulting from Defendant's misrepresentations and/or concealment of the expected volume of SSA visitors to the Leased Premises.

74.     Defendant made material misrepresentations and/or concealed information as to the expected volume of SSA visitors to the Leased Premises prior to the parties entering into the Lease.

75.     These representations were made through, including, but not limited to, GSA and/or SSA representations and/or concealment regarding the expected volume of SSA visitors to the Leased Premises, and/or concealment of SSA office closings in the areas surrounding the Leased Premises.

76.     Plaintiff reasonably relied on Defendant's representations and that Defendant was acting in good faith, dealing fairly and making truthful statements to Plaintiff without concealing material information.

77.     Defendant's material representations and/or concealment regarding the expected volume of SSA visitors to the Leased Premises were erroneous and/or material in nature.

15183748v1 0964084

No.:

78.     In reliance on the Defendant's representations and that the Defendant was acting honestly and in good faith, Plaintiff entered into the Lease with an understanding that, *inter alia*, the volume of SSA visitors to the Leased Premises would not exceed 250 at peak times throughout an entire day of operation.

79.     The actual volume of SSA visitors to the Leased Premises has continually exceeded this amount since the SSA occupied the Leased Premises.

80.     Had Plaintiff known of the material information that Defendant failed to disclose and/or misrepresented regarding the expected volume of SSA visitors, Plaintiff would never have entered into the Lease.

81.     Based on the foregoing, Defendant materially breached the Lease.

82.     As a direct and proximate result of Defendant's failure to disclose and control the excessive number of visitors to the Leased Premises, Plaintiff has suffered substantial damages.

83.     By reason of Defendant's actions and/or inactions, Plaintiff has suffered and will continue to suffer extreme hardship and actual and future irreparable injury, loss, and damages.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment for damages in the amount of $250,000.00 in its favor and against the Defendant The United States, and more particularly, the General Services Administration and the Social Security Administration, statutory interest under the Contract Disputes Act, rescind and/or terminate the Lease, and such further relief the Court deems just and proper.

## COUNT IV – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

84.     Plaintiff hereby re-alleges and reaffirms paragraphs 1-41 of the Complaint above, as if fully set forth herein.

85.     This is an action for damages against the Defendant for the SSA's and/or GSA's breach of the Lease resulting from SSA's customers at the Leased Premises in excess of the

13

No.:

reasonable number of daily visitors and Defendant's failure to disclose material information regarding the expected volume of SSA visitors.

86.    Defendant's use and control of the Leased Premises is unreasonable and beyond the intended use and hinders the Plaintiff's ability to perform under the Lease.

87.    Plaintiff undertook to perform under the Lease without material information of the Defendant's expected volume of SSA visitors at the Leased Premises.

88.    This material information includes, but is not limited to, Defendant's closing of SSA offices in the vicinity of the Leased Premises and the expected high volume of SSA visitors to the Leased Premises.

89.    Defendant was aware that Plaintiff did not have access to material information, including, but not limited to, Defendant's closing of SSA offices in the vicinity of the Leased Premises and the expected high volume of SSA visitors to the Leased Premises, and failed to provide, concealed and/or misrepresented this material information to Plaintiff.

90.    The information supplied by the Defendant and/or Defendant's failure to disclose information prior to the execution of the Lease misled Plaintiff as to the expected volume of SSA customers to the Leased Premises.

91.    Plaintiff's inquiries for information as to the expected volume of SSA visitors to the Leased Premises was never sufficiently answered and the Defendant never provided the material information necessary for Plaintiff to adequately determine the expected volume of SSA visitors and therefore accurately project the viability of SSA occupancy at the Leased Premises.

92.    Defendant did, in fact, possess information that would have allowed Plaintiff to determine the expected volume of SSA visitors at the Leased Premises, including, but not limited

15183748v1 0964084

No.:

to, Defendant's knowledge of SSA office closings in the area and Defendant's tracking of SSA visitors at the office(s) that were closed, whether temporarily and/or permanently.

93.    Defendant's misstatements and/or omissions of fact were material in nature.

94.    Plaintiff asserts that these misstatements and/or omissions of fact were intentional.

95.     Plaintiff reasonably relied on Defendant's representations and that Defendant was acting in good faith, dealing fairly and making truthful statements to Plaintiff without concealing material information.

96.    In reliance on the Defendant's representations and that the Defendant was acting honestly and in good faith, Plaintiff entered into the Lease with an understanding that, *inter alia,* the volume of SSA visitors to the Leased Premises would not exceed 250 at peak times throughout an entire day of operation.

97.    The actual volume of SSA visitors to the Leased Premises has continually exceeded this amount since the SSA occupied the Leased Premises.

98.    Had Plaintiff known of the vital information that Defendant failed to disclose and/or misrepresented regarding the expected volume of SSA visitors, Plaintiff would never have entered into the Lease.

99.    Defendant's actions and/or inactions are a breach of the implied covenant of good faith and fair dealing inherent in every contract.

100.    As a direct and proximate result of Defendant's failure to disclose and control the excessive number of visitors to the Leased Premises, Plaintiff has suffered substantial damages.

101.    By reason of Defendant's actions and/or inactions, Plaintiff has suffered and will continue to suffer extreme hardship and actual and future irreparable injury, loss, and damages.

15183748v1 0964084

No.:

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment for damages in the amount of $250,000.00 in its favor and against the Defendant The United States, and more particularly, the General Services Administration and the Social Security Administration, statutory interest under the Contract Disputes Act, rescind and/or terminate the Lease, and such further relief the Court deems just and proper.

## COUNT V – BREACH OF CONTRACT (IMPOSSIBILITY OF PERFORMANCE)

102.    Plaintiff hereby re-alleges and reaffirms paragraphs 1-41 of the Complaint above, as if fully set forth herein.

103.    Plaintiff pleads this count in the alternative.

104.    Defendant's deliberate failure to limit and/or control the volume and conduct of its tenants hinders the Plaintiff's ability to meet its contractual obligations under the Lease and/or Defendant's actions and/or inactions frustrate the purpose of the Lease, thus making it impossible for the Plaintiff to meet its obligations under the Lease.

105.    Defendant's use and control of the Leased Premises is unreasonable and beyond the intended use.

106.    As a direct and proximate result of Defendant's failure to control the excessive number of visitors to the Leased Premises, Plaintiff has suffered substantial damages.

107.    By reason of Defendant's actions and/or inactions, Plaintiff has suffered and will continue to suffer extreme hardship and actual and future irreparable injury, loss, and damages.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment for damages in the amount of $250,000.00 in its favor and against the Defendant The United States, and more particularly, the General Services Administration and the Social Security Administration, rescind and/or terminate the Lease, and such further relief the Court deems just and proper.

15183748v1 0964084

No.:

## COUNT VI – BREACH OF CONTRACT (IMPRACTICABILITY OF PERFORMANCE)

108.    Plaintiff hereby re-alleges and reaffirms paragraphs 1-41 of the Complaint above, as if fully set forth herein.

109.    Plaintiff pleads this count in the alternative.

110.    Defendant's deliberate failure to limit and/or control the volume and conduct of its tenants hinders the Plaintiff's ability to meet its contractual obligations under the Lease and/or Defendant's actions and/or inactions frustrate the purpose of the Lease; thus, rendering the Lease commercially impracticable by causing the Plaintiff extreme and unreasonable difficulty, expense, injury or loss.

111.    Defendant's use and control of the Leased Premises is unreasonable and beyond the intended use.

112.    As a direct and proximate result of Defendant's failure to disclose and/or control the excessive number of visitors to the Leased Premises, Plaintiff has suffered substantial damages.

113.    By reason of Defendant's actions and/or inactions, Plaintiff has suffered and will continue to suffer extreme hardship and actual and future irreparable injury, loss, and damages.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment for damages in the amount of $250,000.00 in its favor and against the Defendant The United States, and more particularly, the General Services Administration and the Social Security Administration, rescind and/or terminate the Lease, and such further relief the Court deems just and proper.

## COUNT VII – RESTITUTION FOR FRUSTRATION OF PURPOSE

114.    Plaintiff hereby re-alleges and reaffirms paragraphs 1-41 of the Complaint above, as if fully set forth herein.

15183748v1 0964084

No.:

115.    Defendant's deliberate failure to disclose, limit and/or control the volume and conduct of its tenants hinders the Plaintiff's ability to meet its obligations under the Lease and/or Defendant's actions and/or inactions frustrate the purpose of the Lease; thus, depriving the Plaintiff of the benefit of its bargain.

116.    Consequently, Plaintiff is entitled to rescission and/or termination of the Lease and an award of restitution.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment for damages in the amount of $250,000.00 in its favor and against the Defendant The United States, and more particularly, the General Services Administration and the Social Security Administration, rescind and/or terminate the Lease, and such further relief the Court deems just and proper.

## CERTIFICATION OF TIMELY SERVICE

I hereby certify that the foregoing Complaint is being filed and served within the time permitted by the Rules of Court.

Dated:   February 25, 2016.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

Esperanza Segarra
U.S. Federal Court of Claims
District of Columbia Bar No. 494605
Florida Bar No. 527211
Primary E-Mail: esegarra@hinshawlaw.com
Secondary E-Mail: clucas@hinshawlaw.com
2525 Ponce de Leon Boulevard, 4th Floor
Coral Gables, FL 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063

Attorneys for Plaintiff CanPro Investments Ltd.

18